Filed 11/18/14  P. v. Harris CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br> v.<br><br>DENNIS HARRIS,<br><br>   Defendant and Appellant. | C069406<br><br>(Super. Ct. Nos. 10F05930 &<br>10F05349) |

Defendant Dennis Harris appeals following his conviction on three counts of robbery.  (Pen. Code, § 211.)[1]  Defendant contends the trial court erred in admitting into evidence information law enforcement received from a computer aided dispatch printout of a 911 call linking defendant to a white Dodge Magnum, similar to a car seen leaving the last of the robberies for which he was convicted.  Defendant contends that the

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

evidence was hearsay and admitting such information was a violation of his confrontation and fair trial rights.

We conclude that, whether the evidence was admitted for a hearsay or nonhearsay purpose, it was irrelevant and its admission was error. The error, however, was harmless. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### Underlying Facts and Criminal Charges

In August 2010, robberies were committed at a Pizza Hut, a Metro PCS Store, and an International House of Pancakes (IHOP). The robberies at Pizza Hut and the IHOP were recorded on video tape. Following the robbery at the IHOP, a witness saw the robber get into the passenger side of a white Dodge Magnum.

While investigating these robberies, Detective Mike French reviewed a "computer aided dispatch" log (CAD log) from a 911 call made by Laretha Jackson, defendant's wife. The CAD log contained Jackson's allegation that defendant stole her white Dodge Magnum on August 29, 2010, the day after the IHOP robbery.

After reading about the possible connection between defendant and a white Dodge Magnum, Detective French looked at a picture of defendant; he thought defendant "looked similar" to the person who robbed the Pizza Hut and the IHOP. Thereafter, Detective French investigated defendant as a suspect in the robberies.

During that investigation, witnesses from each of the robberies identified defendant in a photographic line-up as the person who robbed their respective stores. After further investigation, defendant was arrested.

Defendant was charged with four counts of robbery (§ 211) and related gun use enhancements (§ 12022.53, subd. (b)). Jury trial began in May 2011, but ended in a mistrial on June 1, 2011. One count of robbery was then dismissed on the prosecution's own motion, and an amended information was filed charging defendant with three counts of robbery and related gun enhancements.

2

**Pretrial Motion to Exclude Evidence**

A second trial began in August 2011 with motions in limine filed by the prosecution. Included in their motions was a motion to introduce the CAD log from Jackson's 911 call. There was no recording of the phone call but the CAD log was a summary, "kept in the normal course of business as a business record," according to the prosecutor. The prosecution was unable to subpoena Jackson to testify.

Defendant objected to the prosecution's motion, arguing the statements made by Jackson in the 911 call were hearsay that did not fall within any statutory exception to the hearsay rule. Defendant also argued Jackson's statements were factually irrelevant because Jackson accused defendant of stealing her white Dodge Magnum the day *after* the perpetrator was seen getting into a white Dodge Magnum outside the IHOP robbery. The trial court agreed with defendant and excluded the 911 call statements reflected in the CAD log.

Later, during trial, the prosecutor sought to introduce "simply the fact that [Detective French] reviewed a CAD call with regard to a white Dodge Magnum which had a potential suspect name of Dennis Harris, that [Detective French] then followed up on the description of Mr. Harris, or something to that effect." The prosecutor argued such evidence was relevant to show how Detective French came to focus his investigation on defendant. The prosecutor agreed she would "avoid" anything related to the details of Jackson's call. Defendant objected, arguing that by allowing the information, it would lead the jury to believe defendant had access to his wife's car at the time of the IHOP robbery, even though the CAD document reported the car had been stolen the following day.

Upon questioning by the trial court, the prosecutor told the court that independent evidence would be admitted connecting defendant to Jackson's car. The prosecutor would show that Jackson was the registered owner of a white Dodge Magnum and she was also defendant's wife (or ex-wife). The prosecutor also had evidence that defendant

3

and Jackson were both in South Sacramento at the time of the IHOP robbery. From that evidence, the prosecutor argued that the jury could reasonably infer that defendant had access to Jackson's white Dodge Magnum at the time of the IHOP robbery.

The trial court agreed with the prosecution and ruled the proffered testimony admissible, saying, "the [P]eople seem to recognize, and it's certainly the Court's admonishment, that the witness is not to articulate the statements made by her or statements made to him regarding the possession of that car or the theft of that car, but, rather, one of the investigative tools or source of information was a CAD Log, the nature of the CAD Log in general terms and that from that, there was a connection, there was information within that [] would give rise to him conducting an additional investigation as to this particular person.

"The fact that [defendant]'s name has now become known to [law enforcement] does give context to how they then proceeded with their investigation, which would have been a far cry different than, as I said, just casting about with, you know, through some kind of random process. It clearly was not that. [¶]…[¶] "There is no content being offered for the truth of the matter. That is the nature of the…information [the prosecutor's] going to elicit."

**Trial Evidence**

At trial, Detective French testified that the white Dodge Magnum seen leaving the IHOP robbery was a "significant lead," the prosecutor then asked the following question: "Now, a couple of days later on the 30th of August, did you receive another CAD type printout which involved a call regarding a white Dodge Magnum and a connection between that vehicle and a person by the name of Dennis Harris?" Detective French replied, "Yes."

The trial court then interrupted and said to the jury, "I'm going to admonish the jury that that's being offered to show the state of the mind and actions of the officer only, not for the truth of the matter."

4

Detective French then explained how that CAD log led him to meet with Jackson. When he met with Jackson, Detective French remembered that she arrived in a white Dodge Magnum, a car he identified from a photo he took of the car. Detective French verified Jackson was the registered owner of that car. Jackson also told Detective French he should talk to defendant's friend "Munchie," who was later identified as Richard Remijio.

Detective French met with Remijio. He showed Remijio still photos from the IHOP and Pizza Hut robberies; Remijio identified defendant as the person in the photos committing the robberies. Detective French also asked Remijio about the nine-millimeter gun used by the perpetrator in the robberies, and seen in the photo stills. Remijio told Detective French he had recently seen defendant carrying that same gun at a party at Remijio's apartment.

Remijio testified at the trial. He described seeing defendant carry a nine-millimeter gun in his waistband at a party. Remijio also testified that he had seen defendant driving a white Dodge Magnum during the summer of 2010. He identified the car depicted in the photograph Detective French had taken of Jackson's car as the car he had seen defendant driving. The witness to the IHOP robbery testified that the car depicted in the photograph is the same as the car in which he had seen the robber leave after that robbery.

## Verdict and Sentencing

The jury found defendant guilty on all three counts of robbery. The jury also found true the gun enhancement allegations. Following his conviction, the trial court sentenced defendant to an aggregate term of 23 years 8 months in prison.

## DISCUSSION

Defendant contends the trial court prejudicially erred in admitting Detective French's testimony regarding the CAD log that linked defendant to a white Dodge Magnum similar to the one seen leaving the IHOP robbery. Defendant argues the

testimony was hearsay and its admission violated his Sixth Amendment right to confrontation, as well as his Fourteenth Amendment right to a fair trial. Assuming defendant has not forfeited his claims for failing to raise them in the trial court, we agree admitting the evidence was error, but find the error harmless.

## A. Relevancy

The trial court ruled Detective French's testimony was admissible for a nonhearsay purpose; that is, to explain how Detective French came to focus his investigation on defendant. But, whether the evidence was "offered for a non-hearsay purpose[,] it still had to be *relevant* to be admissible." (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109-1110 (*Lucero*), original italics.) Because no issue was raised regarding Detective French's investigation, how he came to focus on defendant as a suspect was irrelevant.

In *Lucero*, the defendant was charged with robbing a restaurant. (*Lucero*, *supra*, 64 Cal.App.4th at p. 1109.) During his testimony, the investigating officer explained why he lifted a shoe print from the counter at the restaurant: " 'I asked one of the witnesses what the suspect touched in relation to the counter and the witness pointed to certain areas and pointed to the shoe print…that was left by the suspect that came into the restaurant.' " (*Ibid.*)

The defendant argued the testimony was inadmissible hearsay; the prosecutor argued she was offering it "for the nonhearsay purpose of 'showing [the investigating officer's] good faith or the reasonableness of his conduct.' " (*Lucero*, 64 Cal.App.4th at p. 1109.) The trial court admitted the evidence for that limited purpose. (*Ibid.*)

The *Lucero* court held that the trial court erred in admitting the evidence because "the jury was not asked to determine whether the police had probable cause to arrest [the defendant.]" (*Lucero*, 64 Cal.App.4th at p. 1110.) Thus, whether the evidence was admitted for a nonhearsay purpose, how the investigating officer came to lift the shoe print from the counter was irrelevant "because it had no tendency in reason to prove any

6

disputed issue of fact in the action. [Citations omitted.]" (*Ibid.*) Nevertheless, the court held that the error was harmless because the trial court gave a limiting instruction regarding the testimony and other evidence connecting the defendant to the crime. (*Ibid.*)

Defendant's claim here presents a similar circumstance. Detective French's testimony regarding the CAD log was admitted for the limited purpose of showing how he came to focus on defendant as a suspect in the three robberies. That testimony was irrelevant. As in *Lucero*, there was no dispute regarding defendant's arrest or Detective French's investigation. Accordingly, how Detective French came to focus his investigation on defendant "had no tendency in reason to prove any disputed issue of fact in the action," and the testimony should not have been admitted. (*Lucero*, 64 Cal.App.4th at p. 1110; Evid. Code, § 210.)

### B.  Harmless Error

Error in admitting irrelevant evidence is subject to the *Watson* standard of review. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Admitting evidence in violation of a defendant's rights under the United States Constitution is subject to the more stringent, *Chapman* standard of review. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].) We conclude the trial court's error was harmless under either standard.[2]

"Since *Chapman*, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674].) The harmless error inquiry asks:  "Is it clear beyond a reasonable doubt that a rational jury would have

---

[2] Because we conclude the trial court's error was harmless under the *Chapman* standard, we need not address whether defendant's federal constitutional claims, if not forfeited, have merit.

found the defendant guilty absent the error?" (*Neder v. United States* (1999) 527 U.S. 1, 18 [144 L.Ed.2d 35].) Here, the answer is yes.

In overruling defendant's objection to Detective French's testimony regarding the CAD log, the trial court advised the jury that the evidence was being admitted "to show the state of the mind and actions of the officer only, not for the truth of the matter." We presume the jury followed this limiting instruction. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26; *People v. Panah* (2005) 35 Cal.4th 395, 492.) Furthermore, the evidence connecting defendant to the crimes for which he was convicted was extremely compelling.

Defendant was identified as the perpetrator by multiple witnesses from the three businesses robbed, both in a photographic line-up during the investigation and again at trial. The robberies at IHOP and Pizza Hut were recorded on videotape; those tapes were shown to the jury.

Defendant's friend Remijio also connected defendant to the robberies. Remijio looked at still frame photos of the recorded robberies and identified defendant as the perpetrator. Remijio testified that around the time of the robberies, he had seen defendant with a gun like the one used in the robberies. He also testified that during the summer of 2010, he had seen defendant driving the white Dodge Magnum and identified the one owned by Jackson as the car he had seen defendant driving.

The prosecution also put on evidence that Jackson was the registered owner of a white Dodge Magnum. And, during Detective French's investigation, defendant admitted being married to Jackson, further connecting himself to a car like the one seen leaving the IHOP robbery.

When considered in total, the CAD log evidence was not the critical evidence linking defendant to the three robberies, as defendant contends. We conclude the trial court's error was harmless beyond a reasonable doubt.

8

## DISPOSITION

The judgment is affirmed.

          MURRAY       , J.

We concur:

     RAYE       , P. J.

     MAURO      , J.